# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DEBORAH ROSETTA SHELL,<br><br>   Debtor-Appellant,<br><br>  v.<br><br>STACIA L. YOON,<br><br>   Trustee-Appellee. | Civil Action No. 2:12-CV-439-JVB |

**OPINION & ORDER**

  The Honorable J. Philip Klingeberger, United States Bankruptcy Judge, called the issue now on appeal before this Court "droll and easily resolved, by simply reading the statute in its proper context." *In re Shell*, 478 B.R. 889, 901 (Bankr. N.D. Ind. 2012). Though the Court admires the dry humor of his opinion itself; as further explained below, the bankruptcy court's order must be reversed, because it is not supported by the statutory text.

I.

  Appellant, Deborah Shell, resided in Illinois from 2005 until she moved to Indiana in April of 2011. She petitioned for relief under Chapter 7 of the United States Bankruptcy Code on July 22, 2011, seeking to exempt property from the bankruptcy estate pursuant to 11 U.S.C. § 522(d), which specifies what this Order will call the "federal exemptions." These are available to debtors in bankruptcy except as limited by State law.[1] § 522(b)(1)–(2). Illinois, the State of interest here, *see* § 522(b)(2)–(3)(A), has prohibited its residents, and no one else, from using the federal

---

[1] Many States have enacted legislation restricting the use of the federal exemptions. *See In re Shell*, 478 B.R. 889, 900 (Bankr. N.D. Ind. 2012). Such laws are known as "opt-out statutes."

exemptions. *See* 735 Ill. Comp. Stat. 5/12-1201 (Illinois's opt-out statute). Stacia Yoon, as trustee of the bankruptcy estate, did not contest any relevant facts (*see* Mem. in Opp'n to Obj'n to Exemptions, DE 1-6 (stipulated facts)), but objected to Shell's use of the federal exemptions. Judge Klingeberger sustained the objection, ruling that § 522 preempts Illinois law insofar as Illinois would otherwise allow nonresidents who were domiciled in Illinois at the time determined by § 522(b)(2) and (3)(A) to use the federal exemptions. *Shell*, 478 B.R. at 897, 901.

This appeal has followed, and it is timely. *See* Fed. R. Bankr. P. 8002(a); (Notice of Transmittal, DE 1-9). The Court has jurisdiction under 28 U.S.C. § 158(a)(1). Because there are no factual disputes at issue, the standard of review is de novo. *See Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010).

Shell shows that Illinois's opt-out statute restricts only its residents, points out that she no longer resided in Illinois when she petitioned for bankruptcy, and argues she therefore may exempt as provided in § 522(d). Yoon has no response. On these stipulated facts, the controlling statutory texts plainly leave the federal exemptions open to Shell.

The starting point is the framework of § 522:

> (b)(1) . . . [A]n individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3) Property listed in this paragraph is—
>
>> (A) . . . any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for

> 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.
>
> . . .
>
> If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).[2]

Because Shell's domicile was located in Illinois for the 180 days before the two years before she filed for bankruptcy, the law of Illinois of July 22, 2011, is "the State law that is applicable to [Shell] under paragraph (3)(A)." § 522(b)(2). So the fundamental question appears to be, as Shell contends, whether Illinois law let her exempt under subsection (d).[3] As she further shows, it is true that Illinois's opt-out statute limited only residents of the State:

> In accordance with the provision of Section 522(b) of the Bankruptcy Code of 1978, (11 U.S.C. 522(b)), residents of [Illinois] shall be prohibited from using the federal exemptions provided in Section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d)), except as may otherwise be permitted under the laws of Illinois.

735 Ill. Comp. Stat. 5/12-1201 (unchanged during interim).

II.

The bankruptcy court saw things differently. Interpreting § 522's references to state exemption law as "potential choices of law," *Shell*, 478 B.R. at 898, Judge Klingeberger urged—

> the only way to make real sense of 11 U.S.C. § 522(b)(3) is to place the debtor in a state ordained by 11 U.S.C. § 522(b)(3)(A) during the applicable 180 day

---

[2] Referencing the fact that this last sentence finds itself outside of the numbered paragraphs of subsection (b), some call it the "hanging paragraph" or "dangling sentence." Others call it the "savings clause" because it apparently makes all debtors eligible for some exemption.

[3] In the proceedings before Judge Klingeberger, Shell also invoked the savings clause, citing a ruling that Illinois's exemptions are unavailable to former Illinois residents. *In re Shell*, 478 B.R. 889, 891 (Bankr. N.D. Ind. 2012) (summarizing Shell's previous arguments); *see also In re George*, 440 B.R. 164, 166–67 (Bankr. E.D. Wis. 2010) (deriving an implied residency requirement from the "structure and function" of Illinois's exemption statutes). On appeal, Shell has confined herself to the argument that at any given time, Illinois's opt-out statute limits only those who reside in Illinois.

> period—if that is possible under applicable laws which determine domicile—*and to then apply the actual factual circumstances of the debtor* **at the time of placement** to the issue of domicile.

*Id.* at 897. He put across that the filling-in of the federal structure of the Bankruptcy Code by State law is not unusual, and likened the analysis to a federally-funded highway construction project in which State authorities control the construction. *Id.* at 898. Four principal supporting premises were offered.

First, the current form of § 522 resulted from the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the purpose of which, Judge Klingeberger said, was "to avoid the effects of exemption forum shopping." *Id.* at 898; *see also id.* at 900 ("Congress' goal in drafting the 2005 amendments to § 522 was to prevent, or at least to curb, what was perceived as rampant forum shopping under the former law."). He concluded that because his approach nullifies the effect of Shell's move on her menu of exemptions, his interpretation does a better job of realizing the legislature's purpose than Shell's approach would. *Id.* at 898–901.

Second, Judge Klingeberger found that the text of § 522 compelled his construction. In this vein, the opinion declared the statute "*not in any manner ambiguous*," *id.* at 898, and ruled:

> [T]he phrase "that is applicable on the date of the filing of the petition to the place . . ." in . . . §522(b)(3)(A) . . . simply states exactly what it says: once placed, a debtor—if deemed domiciled in a state under that state's law—is subject to the exemption law of that state as that law was effective on the date of the petition . . . .

*Id.* at 898–99 (first omission in original). The court continued by explaining why, when a bankruptcy petitioner has made exactly one interstate move in the relevant time frame, during which the debtor's former State changed its exemptions, the petitioner is eligible to exempt only as permitted by the former State's amended law. *Id.* at 899. This does not conflict with Shell's position on appeal, however, and ultimately presents no issue here, because no one has

4

contended that Illinois law changed at any relevant time. It also does not show how or why *the words* of the statutes oblige the meaning the bankruptcy court attributed to them.

Third, Shell, in transferring her State of domicile from Illinois to Indiana, moved from one opt-out State to another. Under such circumstances, Judge Klingeberger concluded that letting her invoke the federal exemptions would be "absurd." *Id.* at 901. The Court returns to this argument below.

Fourth, where determining whether a State's opt-out statute or exemptions have extraterritorial effect is hard, the bankruptcy court's method is easier to apply than the approach advocated by Shell. *Id.* at 901. This consideration, of course, takes a back seat to the plain requirements of the statutory text. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (demonstrating that the meaning of unambiguous text controls).

The bankruptcy court also discussed at length the role of the savings clause, which the preemptive interpretation of § 522 renders useless, according to one of this theory's leading proponents. Laura Bartell, *The Peripatetic Debtor: Choice of Law and Choice of Exemptions*, 22 Emory Bankr. Dev. J. 401, 424 (2006) (advocating the preemption view and explaining the savings clause should never apply, because "§ 522(b)(3)(A) should be read to incorporate the applicable state's exemptions without regard to any conflict of laws principles, or any limiting language, that restricts the applicability of the exemptions to persons not including the debtor"). Recognizing that courts generally avoid interpretations that render some of the text redundant or meaningless, *e.g.*, *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995) and *Kungys v. United States*, 485 U.S. 759, 778 (1988)), Judge Klingeberger sought to illustrate uses of the savings clause that are compatible with preemption. He began with what he characterized as the "remote" hypothetical case

5

presented by a debtor who has moved interstate during the 730 days just before the petition, having been domiciled in one State for half of the 180-day period and in one other State for the other half. *Shell*, 478 B.R. at 899. In the next six instances, the bankruptcy court assumed establishing the State of the debtor's domicile for purposes of § 522 would be impossible. All these examples fail because § 522(b)(2) is always subject to whatever State law paragraph (3)(A) points to, if any. If paragraph (3)(A) determines no particular State for a debtor, then, regardless of the savings clause, no State can take the federal exemptions away from her under subsection (b)(2).[4]

### III.

The Court agrees with Judge Klingeberger, however, on the basic point that this case is ultimately about statutory interpretation. *See Shell*, 478 B.R. at 891. That process begins with the language itself, which, if plain, is enforced according to its terms unless the disposition so determined would be absurd. *Sebelius v. Cloer*, 133 S. Ct. 1886, 1896 (2013) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). Courts evaluate ambiguity or plainness of meaning using "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (quotation marks and citations omitted).

Because the paramount issue is whether Illinois's opt-out statute affects Shell, the central phrase is "the State law that is applicable to the debtor under paragraph (3)(A)." § 522(b)(2).

---

[4] Although Shell has not placed the extraterritorial use of Illinois's exemptions at issue on appeal, the Court notes that the savings clause apparently cannot play any role that is reconcilable with Judge Klingeberger and Professor Bartell's view that § 522(b) is a preemptive choice-of-law provision. Without preemption, on the other hand, the savings clause could matter. For example, take a debtor who has moved interstate within 730 days of his petition and at no other time. The debtor's former State forbids extraterritorial use of its exemptions, having opted out of the federal exemptions by a statute that covers former residents of the State for at least 730 days after the interstate move.

Paragraph (3)(A) refers to *Illinois law* "applicable on the date of the filing of the petition," because Illinois is "the place in which the debtor's domicile [was] located" for the 180 days preceding the 730 days that ended with Shell's bankruptcy petition. The Bankruptcy Code defines "debtor" as "person . . . concerning which a case under [the Code] has been commenced." 11 U.S.C. § 101(13).

Read fairly, this is not ambiguous. "[T]he debtor" here is Deborah Shell, because this is her bankruptcy case. *See id.* Consequently, § 522(b)(2) plainly calls for determining whether the State law determined by paragraph (3)(A)—that is, the Illinois law of July 22, 2011—forbade *Shell* from using the federal exemptions. Illinois did not so constrain her, because she had moved out of the State by then. *See* 735 Ill. Comp. Stat. 5/12-1201 (barring only "residents" from the federal exemptions). After all, Illinois's statutes give *resident* no special meaning in this context, and its ordinary lay and legal meanings are incompatible with the conclusion that on the facts as presented, Shell remained an Illinois resident at the time of her petition. *See Gem Elecs. of Monmouth, Inc. v. Dep't of Rev.*, 702 N.E.2d 529, 533 (Ill. 1998) (finding the meaning of statutorily-undefined terms by consulting a dictionary); Oxford Dictionaries, http://oxforddictionaries.com/definition/english/resident (last visited September 12, 2013) (*resident* means "person who lives somewhere permanently or on a long-term basis"); *Black's Law Dictionary* 1335 (8th ed. 2004) ("**resident,** *n.* **1.** A person who lives in a particular place. **2.** A person who has a home in a particular place. • In sense 2, a resident is not necessarily either a citizen or a domiciliary."); *id.* at 524 (*domiciliary* means "person who resides in a particular place with the intention of making it a principal place of abode"); (Appellant's Br. 1, DE 3 at 6 ("Appellant resided in Indiana on the date her bankruptcy petition was filed. . . . Appellant was domiciled [in Indiana] for over 180 days preceding the petition date."). Yoon has not claimed,

and the bankruptcy court did not find, that Shell remained an Illinois resident in any sense after she became domiciled in Indiana. On this record, the statutes plainly allow Shell to take advantage of the federal exemptions.

At this point, the Court returns to the bankruptcy court's claim that because BAPCPA was designed in part to combat forum shopping, it would be absurd to allow Shell the federal exemptions after she moved from one opt-out State to another. *Shell*, 478 B.R. at 901. To be sure, it's no great leap from BAPCPA's establishment of a lengthy look-back window in § 522(b)(3)(A) to infer that one of its purposes was to put the brakes on "shopping" for more-expansive State exemptions. But the further purpose of barring the *former* residents of States with resident-only opt-out statutes from the federal exemptions for the first 730 days after they move follows from neither that inference, nor the text of § 522, nor even the House Report[5] on BAPCPA cited by the bankruptcy court. *Shell*, 478 B.R. at 900 n.3. The cited portion of the Report says BAPCPA—

> restrict[ed] the so-called "mansion loophole." Under [then-]current bankruptcy law, debtors living in certain states [could] shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate[d] to these states just to take advantage of their "mansion loophole" laws. [BAPCPA] close[d] this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the [then-]current requirement [could] be as little as 91 days.

H.R. Rep. No. 109-31, pt. 1, at 15–16 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102. Like the text of the statute, this excerpt addresses "shopping" for State exemptions, not the federal ones. The Court's interpretation is at odds with no objectively-discernible intent of the legislature.

---

[5] It is for the sake of argument that the Court discusses the House Report. The Court is not deciding that legislative history is relevant to interpreting § 522. *See Five Points Road Joint Venture v. Johanns*, 542 F.3d 1121, 1128 (7th Cir. 2008) (suggesting legislative history only where the statutory text is ambiguous (citing *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir. 1992))).

In any case, apparent oddity does not, per se, amount to absurdity. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005). "[T]he Illinois scheme of exemptions is allowed to be 'quite inconsistent with the general goals of the federal Bankruptcy Code.'" *Clark v. Chi. Mun. Employees Credit Union*, 119 F.3d 540, 544–45 (7th Cir. 1997) (quoting *In re Geise*, 992 F.2d 651, 655–56 (7th Cir.1993)). Shell's right to use the federal exemptions is simply the natural consequence of Congress's decision to let States opt out of the federal exemptions in ways that confine only their residents. Furthermore, the provision of the federal exemptions by the savings clause evinces an assessment that itinerant debtors' power to use them is no curse. These legislative choices are not ridiculous.

Even if they were, absurdity arguably should "not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions." Antonin Scalia & Bryan A. Garner, *Reading Law* 237–38 (West 2012) (citing *Chung Fook v. White*, 264 U.S. 443, 444–46 (1924) ("The words of the statute being clear, if it unjustly discriminates . . . , or is cruel and inhuman in its results, as forcefully contended, the remedy lies with Congress and not with the courts.")). Section 522 contains no potential absurdity that would be "reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error (e.g., *losing party* instead of *winning party*)." *Id.* at 238. Any incongruity caused here by § 522 and Illinois's opt-out statute would not be safely attributable to a mere slip of the pen.

What is more, the Court's interpretation of § 522's interaction with a residents-only opt-out statute follows a well-worn path. Bankruptcy courts in Wisconsin have construed § 522 and Illinois's opt-out statute the same way this Court does now. *In re Willis*, No. 12-16372, 2013 WL 2250428 at *4 (Bankr. W.D. Wis. May 22, 2013) (quoting *In re George*, 440 B.R. 164, 168

9

(Bankr. E.D. Wis. 2010) ("[T]he Illinois opt-out provision does not apply to prevent a nonresident from claiming the federal bankruptcy exemptions . . . .")). In considering whether Florida's opt-out statute restricted a debtor who had recently left the State, the Court of Appeals for the Fifth Circuit encountered a text analogous to that of Illinois. *See* Fla. Stat. § 220.20 (restricting only "residents" from the federal exemptions); *In re Camp*, 631 F.3d 757, 760 (5th Cir. 2011). By the "plain language of § 522(b)(2) and Florida's opt-out statute," the debtor was allowed to claim the federal exemptions. *Camp*, 631 F.3d at 761. The Fifth Circuit rejected claims that its interpretation was absurd and conducive to impermissible forum shopping, pointing out that Florida's opt-out statute had required residency since its enactment in 1979 "even though § 522(b), since 1978, has forced some debtors to apply the opt-out law of the state of their former domicile." *Id.* Illinois opted out in 1980, *see In re Marriage of Logston*, 469 N.E.2d 167, 173 (Ill. 1984), so its decision to constrain only residents has likewise coexisted with a look-back provision in § 522(b) for over thirty years. And as the Fifth Circuit showed in *Camp*, 631 F.3d at 760–61, bankruptcy courts used the same approach in dealing with the comparably-worded opt-out statutes of Georgia, *In re Chandler*, 362 B.R. 723, 726–27 (Bankr. N.D. W. Va. 2007), Colorado, *In re Underwood*, 342 B.R. 358, 361–62 (Bankr. N.D. Fla. 2006), South Dakota, *In re Volk*, 26 B.R. 457, 460–61 (Bankr. D.S.D. 1983), and Alabama, *In re Walley*, 9 B.R. 55, 57–58 (Bankr. S.D. Ala. 1981). As if this weren't enough, it appears courts widely presume no preemption of State law in the context of bankruptcy. *In re Fed.-Mogul Global Inc.*, 684 F.3d 355, 365 (3d Cir. 2012) (applying a "'strong presumption'" against preemption in a bankruptcy setting (quoting *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997))); *Pac. Gas & Elec. Co. v. California ex rel. Cal. Dep't of Toxic Substances Control*, 350 F.3d 932, 943 (9th Cir. 2003) ("[T]he presumption

against displacing state law by federal bankruptcy law is just as strong . . . as in other areas of federal legislative power." (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) and *Midlantic Nat'l Bank v. N.J. Dep't of Environmental Protection*, 474 U.S. 494, 501 (1986))); *In re Irving Tanning Co.*, No. 10-11757 et al., 2013 WL 4400254 at *16 (B.A.P. 1st Cir. Aug. 15, 2013) (approvingly quoting *Fed.-Mogul Global Inc.*, 684 F.3d at 365); *see also Clark*, 119 F.3d at 544–45 (allowing Illinois's exemption scheme to be "'quite inconsistent with the general goals of the federal Bankruptcy Code'" (quoting *Geise*, 992 F.2d at 655–56)).

In sum, the relevant statutes plainly allow Shell to use the federal exemptions. Even if the text contained ambiguity, it should be resolved in accordance with the canons of respecting ordinary meaning and prior construction by other courts, and avoiding surplusage and federal preemption. All of these support the Court's interpretation.

IV.

The bankruptcy court's order sustaining Yoon's objection to Shell's exemptions under § 522(d) is therefore **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this Opinion & Order.

**SO ORDERED** on September 24, 2013.

                                                   s/ Joseph S. Van Bokkelen
                                                  JOSEPH S. VAN BOKKELEN
  &nbsn;                                                UNITED STATES DISTRICT JUDGE